IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Joshua Page, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-07431 |
| | ) | |
| City of Chicago, et al., | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joshua Page filed a five-Count Second Amended Complaint pursuant to 42 U.S.C. § 1983 alleging unreasonable seizure (Count I), unreasonable pretrial detention (Count II), and a state law claim of malicious prosecution (Count III) against City of Chicago police officers Edward Johnson, Anthony Bruno, J.M. Chesna, C.A. Brown, T.S. Jones, M.A. Padalino, K.E. Miles, R.L. Davis, C. Iglesias, and J.M. Grubisic ("Defendant Officers"). The Second Amended Complaint also asserts a claim of supervisor liability (Count IV) against Sergeant Joseph Long ("Sergeant Long") and a *Monell* liability claim (Count V) against the City of Chicago. Sergeant Long moves to dismiss plaintiff's Count IV and the City of Chicago moves to dismiss plaintiff's Count V pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, defendants' motions to dismiss [52, 59] are granted.

**Background**

The following allegations in the Second Amended Complaint are taken as true for the purpose of ruling on these motions. On August 31, 2018, Defendant Officers stopped Page without probable cause. Page was then arrested and charged with a criminal offense. During the relevant times, Sergeant Long supervised the Defendant Officers. On April 25, 2019, Cook County prosecutors filed a motion to nolle pros all charges against Page and the case was dismissed.

**Legal Standard**

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all of the plaintiff's allegations as true and views them in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). To survive a motion to dismiss, a complaint must contain allegations that "state a claim to relief that is plausible on its face." *Id.* at 632 (internal quotations omitted). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

  **Supervisor Liability Claim**

Sergeant Long moves to dismiss Page's supervisor liability claim, Count IV, arguing that the Second Amended Complaint does not allege sufficient facts to draw a reasonable inference that Sergeant Long had knowledge of or personal involvement with Defendant Officers' conduct of arresting citizens without probable cause. In order for a supervisor to be liable in a section 1983 case, "[t]he supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988); *see also Matthews v. East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

Here, Page alleges that Long knew the Defendant Officers "had a practice of arresting citizens without probable cause." (SAC at ¶ 51). The only factual support that Page presents to support his allegation that Sergeant Long knew and is liable is that four of the Defendant Officers

2

"had a combined 136 complaints against them without being disciplined[.]" (Pl.'s Resp. at 5). However, merely citing to the fact that complaints were filed against certain Defendant Officers—without more information linking those complaints to the alleged constitutional violation here—is not enough to allow the Court to plausibly infer that Sergeant Long had knowledge of the Defendant Officers' unconstitutional conduct. The most glaring omission is the lack of any details regarding the nature of these complaints.

Plaintiff also alleges that Sergeant Long "approved, assisted, condoned and/or purposely ignored" Defendant Officers' practice of arresting citizens without probable cause. (SAC at ¶ 52). Reviewing the allegations in the light most favorable to Page, the Court finds that these allegations are purely conclusory and simply restate the elements of the offense. Page fails to provide any factual support for these allegations. Although the well-pleaded facts in the Second Amended Complaint are accepted as true, legal conclusions merely reciting the elements of Page's supervisor liability claims are not entitled to this benefit. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). Accordingly, Count IV is dismissed without prejudice.

### *Monell* **Liability Claim**

The City of Chicago moves to dismiss Page's *Monell* liability claim, Count V, arguing that Page's allegations are conclusory and fail to support a plausible inference that the City of Chicago maintained a widespread practice that caused Page's injury. To successfully allege a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a plaintiff must show "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019); *see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) ("In order to hold a government entity

such as a municipality or county liable under section 1983, the plaintiff must demonstrate that the government entity [ ] itself caused the constitutional violation at issue.").

In Page's Second Amended Complaint, he alleges that several widespread practices of the CPD caused his constitutional injury. To sufficiently allege the existence of a widespread practice so permanent that it constitutes a policy with the force of law, Page must set forth some facts that his incident was not an isolated or random occurrence. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom."); *see also Bridges*, 950 F.3d at 479 ("We have not adopted bright-line rules defining 'widespread custom or practice,' but there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events.").

1. *Failure to Discipline, Supervise, Control and "Code of Silence"*

First, Page alleges that the City of Chicago maintains widespread practices of failing to discipline, supervise, and control its police officers. While the Second Amended Complaint contains myriad allegations pertaining to the City of Chicago's alleged practices, these allegations are insufficient to support such findings. For example, Page alleges that prior to his arrest the CPD "facilitated the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct[.]" (SAC at ¶ 56). He also alleges that CPD officers "abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases." (*Id.* at ¶ 67). These allegations are general and unsupported by the facts. Similarly, Page alleges that four of the Defendant Officers "had dozens of citizens' complaints filed against them without the City of Chicago implementing any significant discipline against them." (*Id.* at ¶ 62). As stated earlier, these allegations—without more information connecting the complaints to the alleged constitutional

violation at issue here—are insufficient to support Page's *Monell* claim. *See, e.g., Boone v. City of Chi.*, 2018 WL 1014509, at *1-2 (N.D. Ill. Feb. 22, 2018) (Tharp, Jr., J.) (dismissing plaintiffs' *Monell* claim where the plaintiffs failed to provide information about the subject matter of the complaints); *See, e.g., Thomas v. City of Markham*, No. 16 CV 08107, 2017 WL 4340182, at *4 (N.D. Ill. Sept. 29, 2017) (Alonso, J.) ("[A]llegations of general past misconduct or allegations of dissimilar incidents are not sufficient to allege a pervasive practice and a defendant's deliberate indifference to its consequences."). To further support, Page claims that "[a]s a matter of express policy, the City of Chicago refuses to take into consideration patterns of [unsustained] allegations of civil rights violations when evaluating the merits of a complaint." (SAC at ¶ 69). This claim is simply too vague and unclear to support a plausible inference that the CPD maintains any widespread practice that caused Page's injury.

Page also alleges that the CPD maintained a widespread practice referred to as the "code of silence" under which officers do not report other officers' misconduct. (*Id.* at ¶ 58). According to Page, the City of Chicago was "aware of, and condone[d] and facilitate[d]" this practice through their inaction. (*Id.* at ¶ 59). To support his allegation, Page alleges that Chicago Mayor Rahm Emanuel admitted in a December 2015 television interview that a "code of silence exists among Chicago police officers[.]" (*Id.* at ¶ 59-60). The Court notes that Mayor Emanuel's statement was made in the context of an excessive force case involving a police shooting. This is distinguishable from the facts alleged here. Page further alleges that the "code of silence" is the moving force behind his constitutional injuries because Defendant Officers' "decision to violate plaintiff's civil rights was proximately caused by a belief that they were impervious to consequences due to the City's willingness to tolerate a code of silence and failure to investigate." (Pl.'s Resp. at 11). While the Mayor's address sufficiently supports the allegation that the CPD maintained a "code of silence,"

Page has failed to adequately allege facts showing the requisite causal connection to allow the Court to plausibly infer that the "code of silence" was the moving force behind his injury.

2. *Failure to train*

Page also alleges that his constitutional deprivation arises out of the CPD's widespread practice of failing to train its officers. Failure to train "may serve as the basis for § 1983 liability only where the failure to train … amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). A prerequisite to deliberate indifference is that "the defendant must have actual or constructive notice of a problem." *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). Actual or constructive notice can be shown by a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citation omitted).

Here, Page has failed to plead a claim for failure to train. Specifically, he has not alleged any other similar constitutional violations by Chicago police officers other than his own, he has not identified the type of training the City failed to provide, nor does he allege sufficient facts linking a failure to train to his injuries. In support of his claim, Page merely asserts that "CPD does not provide officers or supervisors with adequate training and does not encourage or facilitate adequate supervision of officers in the field." (SAC at ¶ 61). He broadly explains that "[t]hese shortcomings in training and supervision result in officers who are unprepared to police lawfully and effectively; supervisors who do not mentor or support constitutional policing by officers; and a systemic inability to proactively identify areas for improvement, including Department-wide training needs and interventions for officers engaging in misconduct." (*Id.*). Outside of these generic statements, there are no further facts substantiating these allegations. Because no other facts link these

allegations to particular instances of police misconduct, there is not enough for this Court to plausibly infer that the CPD is liable under this theory.

Page attempts to overcome the factual deficiencies in the Second Amended Complaint by citing to the Department of Justice's January 2017 report on the Chicago Police Department ("DOJ Report"), which mainly addresses the CPD's deficiencies as it relates to the use of excessive force. Page's argument is unavailing because he has not brought an excessive force claim and he has failed to show how any of the deficiencies identified in the DOJ Report relate to his claim that Defendant Officers arrested him without probable. *See Carmona v. City of Chicago*, 2018 WL1468995, *4 (N.D. Ill. March 26, 2018) (St. Eve, J.) (explaining that "the DOJ report certainly identifies serious shortcomings in CPD's supervisory systems, but the Court cannot countenance it as a master key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the plaintiff connects his claims to the report's findings."). Therefore, the Court dismisses Page's *Monell* claim without prejudice.

**Conclusion**

For the foregoing reasons, defendant Sergeant Long's motion to dismiss [59] Count IV is granted without prejudice, and defendant the City of Chicago motion to dismiss [52] Count V is granted without prejudice. Further, the Court grants plaintiff leave to file an amended complaint within thirty days, in accordance with this Order.

**IT IS SO ORDERED.**

Date: 2/3/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge